# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH CROSBY, JR.** | **CIVIL ACTION NO. 6:13-cv-02134** |
| **LA. DOC #569110** | |
| **VS.** | **SECTION P** |
| | **JUDGE JAMES T. TRIMBLE** |
| **WARDEN N. BURL CAIN** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on May 7, 2013 by *pro se* petitioner Joseph Crosby. This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## I. STATEMENT OF THE CASE

Petitioner is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner pled guilty to second degree murder of his wife on April 19, 2010. He was sentenced on May 25, 2010 to life imprisonment by the Sixteenth Judicial District Court for St. Mary Parish, Louisiana. In his petition for writ of *habeas*

*corpus,* Petitioner attacks his April 19, 2010 conviction.

Petitioner did not directly appeal his conviction or sentence. On July 7, 2010, Petitioner filed a handwritten pleading in the Sixteenth Judicial District Court which the court construed as an application for post-conviction relief ("PC1") seeking to withdraw his guilty plea and/or appeal. The application was denied by the trial court on July 14, 2010. *R. 32-8.*

Petitioner sought writs in the Louisiana First Circuit Court of Appeal. The writ application was assigned First Circuit docket number 2010-KW-1493. On November 22, 2010, the Louisiana First Circuit denied the writs stating, "denied on the showing made." *State v. Crosby*, 2010-KW-1493 (La. App. 1st Cir. 11/22/10). *R. 32-12, p. 57.*

Petitioner attempted to seek further discretionary review of the writ denial in the Louisiana Supreme Court by letter dated November 25, 2010. The letter, however, does not contain any reference to the November 22, 2010 decision of the Louisiana First Circuit Court of Appeal and is clearly not in compliance with the Louisiana Supreme Court's rules for the filing and content of writ applications, La. S.Ct. Rule X, § 2 and 4. On December 1, 2010, the Louisiana Supreme Court returned petitioner's letter unfiled; the court advised petitioner that in order to challenge his conviction or sentence, he would have to file an application for post-

2

conviction relief in the trial court.

On December 2, 2010, Petitioner filed a second handwritten post-conviction application dated November 29, 2010 ("PC2"). The trial court denied the Application on December 8, 2010 and Petitioner apparently did not seek review of the trial court's ruling in the Louisiana First Circuit Court of Appeal.

Petitioner also filed several motions in the trial court which resulted in adverse rulings: Motion for Evidence on November 1, 2010; Motion to Reconsider Sentence, November 9, 2010; Motion to Suppress, January 4, 2011. Petitioner admits he did not seek timely appellate review of any of these adverse rulings. *R. 1, ¶ 11(d) & (e).*

A third application for post-conviction relief was filed by Petitioner on April 19, 2011 ("PC3"). Petition raised the following claims for relief: (1) that his plea was invalid because it was not knowingly, intelligently and voluntarily entered because Petitioner received no deal or benefit in exchange for his plea, and was accepted when Petitioner was undergoing mental health treatment and was under the influence of medication; (2) that his conviction was invalid because he was intoxicated at the time of the offense and could therefore not distinguish between right and wrong; and (3) that his counsel was ineffective for (a) failing to investigate petitioner's alcohol intoxication at the time of the offense to raise an

insanity defense and failing to investigate facts supporting the lesser offense of manslaughter (his wife's alleged affair with his boss), (b) failing to inform Petitioner of the option to raise an insanity or manslaughter defense at trial rather than entering a guilty plea to second degree murder, and (c) failing to ensure that Petitioner was mentally competent. The application along with Petitioner's accompanying request for an Evidentiary Hearing was denied on May 24, 2011 for failure "to allege a claim which, if established, would entitle the Petitioner to relief."

On June 22, 2011, Petitioner filed a writ application with the Louisiana First Circuit Court of Appeal, docket number 2011-KW-1167. Petitioner raised the same three claims raised in his third post-conviction application, PC3. The First Circuit denied writs on August 29, 2011. *State v. Crosby*, 2011-KW-1167, (La.App. 1st Cir. 8/29/11). *R. 32-14, p. 44*.

On September 21, 2011, Petitioner sought writs in the Louisiana Supreme Court, raising the same claims as in the First Circuit. The Louisiana Supreme Court denied writs without comment on October 12, 2012. *State v. Crosby*, 2011-KH-2091, 99 So.3d 35 (La. 2012).

On February 27, 2013, Petitioner filed a Motion for Authorization to file an out-of-time federal *habeas corpus* petition and Motion for Subpoenas for

4

witnesses for trial. Both Motions were denied on March 12, 2013.

Petitioner claims he sought review of these rulings in the Louisiana Supreme Court by a letter entitled "Motion for Authorization" dated March 28, 2013. On April 5, 2013, Petitioner's letter was returned to him unfiled and he was advised to request the proper forms from the United States District Court for the Eastern District of Louisiana.

On March 26, 2013, Petitioner filed a Motion for Evidentiary Hearing, complaining he was not apprised of the possible sentence for the charged offense. The Motion was denied on April 8, 2013 because the transcript of Petitioner's Plea Hearing demonstrated he was advised that the penalty for second degree murder is life imprisonment. There is no evidence suggesting that Petitioner sought review of this ruling with the First Circuit Court of Appeal or the Louisiana Supreme Court.

Petitioner filed the federal *habeas corpus* petition at bar on May 1, 2013 when it was placed in the prison mailing system. The petition was tendered for filing in the Eastern District Court on May 2, 2013 and was filed into the record on May 7, 2013. Petitioner asserts the following claims for relief:  (1)  his plea was invalid because it was not knowingly, intelligently and voluntarily entered because Petitioner received no deal or benefit in exchange for his plea, and was accepted

when Petitioner was undergoing mental health treatment and was under the influence of medication; (2) his conviction is unconstitutional because he was under the influence of alcohol;(3) he received ineffective assistance of counsel (no specific grounds are stated); (4) the trial judge did not follow procedures for a first time offender who plead guilty; and counsel was ineffective for failing to advise Petitioner of a plea bargain apparently offered by the State. In a handwritten addendum, Petitioner makes a list of "Constitutional Violation[s]" aimed primarily at the effectiveness of counsel and the validity of his guilty plea, to wit: (a) "counsel failure [sic] to investigate the witness and prepare Crosby [sic] defense," (b) "counsel allowed impact statement to be accepted as evidence with no objection," (c) "counsel never acknowledge [sic] to the court his client mental health issue", (d) "counsel had appeared in court completely unprepared to go to trial," (e) the trial court failed to make an effective appoint of counsel, (f) Petitioner "never admitted he attended [sic] the victim death nor understood charge," (g) Petitioner "was convicted and sentence [sic] own [sic] admission," (h) Rule 11 of the Federal Rule of Criminal Procedure was violated, (I) Petitioner's "conduct does not fall within the charge," (j) Petitioner "entered a constitution [sic] deficient guilty plea to second degree murder," (k) a "constitutionally infirm guilty plea may be withdrawn," (l) the State did not prove the murder was

6

"knowingly or intentionally," (m) the trial court was "to inform [Petitioner] of range of sentences to which he was exposed," (n) Petitioner was "not given an opportunity to dispel such factors in PSI Report, (o) the prosecutor failed to disclose favorable evidence to Petitioner, and (p) Petitioner was not given a breathalyser test by Detective Lt. C. LeBlanc. By amendment, Petitioner also complains that his guilty plea was invalid because his intent to commit murder was not proven, and the record does not demonstrate that he was advised of the "minimum and mandatory sentence" for a first offender charged with second degree murder.

## *II. LAW AND ANALYSIS*

As a preliminary matter this court reviews Petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section C.

*A. Timeliness*

The State argues that certain of Petitioner's individual federal *claims* are time-barred by the one year limitation period set forth in 28 U.S.C. § 2244. More specifically, the State argues that petitioner should have raised these claims within one year of his sentencing, respectively. *R. 31, p. 23.* That argument is not well taken.

7

The one year limitation imposed by § 2244(d) begins to run "from the latest of" four triggering specified dates.  28 U.S.C. § 2244(d)(1).  That limitations period is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  An application for post-conviction or other collateral review includes any  "form of review that is not part of the direct appeal process."  *Wall v. Kholi*, 562 U.S. 545, 131 S.Ct. 1278 (2011).

Here, Petitioner was sentenced on May 25, 2010. His conviction became final on June 25, 2010, thirty days later when he did not file a post-conviction appeal, and the federal one year statute of limitations clock started to run.  While Petitioner made several attempts, successfully and unsuccessfully, at filing post-conviction applications, after  accounting for the pending periods between the completion of state review and the filing of the federal habeas application, Petitioner's habeas petition is not time–barred. The petition was filed on May 1, 2013 less than one un-tolled year later.  To adopt the State's argument in this case would therefore render the tolling provision in § 2244(d)(2) superfluous and meaningless.

*B. Exhaustion and "Technical" Procedural Default*

The scope of federal habeas review is limited by the intertwined doctrines of

procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *Bledsue v. Johnson*, 188 F.3d 250, 254–55 (5th Cir.1999).

It is well settled that a petitioner seeking federal habeas corpus relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, (1982); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001). When a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92–93 (5th Cir.1989).

Moreover, each claim must be presented to the state's highest court, even when

review by that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998). In Louisiana, the highest court is the Louisiana Supreme Court. Thus, in order to properly exhaust a claim, a federal habeas corpus petitioner must have fairly presented the substance of the claim in a procedurally correct manner to the Louisiana Supreme Court.

Under Louisiana law, the various Courts of Appeal have supervisory jurisdiction over cases which arise within their circuits. LSA Const. Art. 5, § 10(a). Specifically, with regard to Applications for Post–Conviction Relief, LSA C.Cr.P. art. 930.6 provides, "The petitioner may invoke the supervisory jurisdiction of the court of appeal if the trial court dismisses the application or otherwise denies relief on an application for post-conviction relief." Thus, the first step in the review process is an application for writs in the appropriate court of appeals.

In light of the procedural history provided in the foregoing, the only claims which Petitioner properly exhausted in the Louisiana State Courts are those claims raised in Petitioner's third post-conviction application, PC3. Thus, this Court can address Petitioner's first and second claims for relief as well as his third claim for relief only insofar as Petitioner contends counsel was ineffective for failing to investigate Petitioner's alcohol intoxication at the time of the offense to raise an insanity defense failing to investigate facts supporting the lesser offense of

manslaughter based on his wife's alleged affair with his boss, and failing to raise the issue of Petitioner's competence. The remainder of the claims presented herein appear to never have been properly exhausted in the Louisiana State Courts[1] and accordingly, are now "technically" procedurally defaulted.

*C. Habeas Corpus Standard of Review*

This *habeas* petition was filed on May 5, 2013; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[2]   AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (citing *Teague v. Lane,* 489 U.S. 288, 306 (1989) and *Williams v. Taylor,* 529 U.S. 362 (2000)) (noting that AEDPA "placed a new restriction on the

---

[1] *See* 28 U.S.C. § 2254(b)(1) "An application for writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – the applicant has exhausted the remedies available in the courts of the State ...."

[2] Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .  exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya* , 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 (citing *Engle v. Isaac*, 456 U.S. 107, 134-35

(1982)).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000);  *Montoya,* 226 F.3d at 403-04.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt,* 230 F.3d at 740.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404.  A federal *habeas* court may not

13

issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* (citing 28 U.S.C. § 2254(d)(2)); *Knox,* 224 F.3d at 476.

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

14

*1. Claim One -  Guilty Plea*

Petitioner contends his plea was invalid because Petitioner received no deal or benefit in exchange for his plea because he was undergoing mental health treatment and under the influence of medication at the time he entered his guilty plea of Second Degree Murder. Petitioner was sentenced to the mandatory term of life imprisonment without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1.

The trial court considered this claim in Petitioner's Application for Post Conviction Relief filed on April 26, 2011. The court denied Petitioner's application on July 14, 2010 noting that Petitioner indicated he was entering the plea agreement willingly and voluntarily and that no threats or promises other than the plea agreement had been made to him. The First Circuit denied writs on Petitioner's Application.

The United States Supreme Court law governing the voluntariness of a guilty plea is *Brady v. United States*, 397 U.S. 742 (1970) and its progeny. The Supreme Court has held that "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.' " *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A guilty plea is valid if it is entered voluntarily and intelligently considering

the totality of the circumstances. *Brady*, 397 U.S. at 749; *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969). The central question is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

Although the Supreme Court has noted that the defendant's representations at the time of his guilty plea are not "invariably unsurmountable" when challenging the voluntariness of his plea, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Since the state court's determination of competency is presumed correct, a federal habeas petitioner bears a heavy burden in contesting his competency during federal collateral review. *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir.1994).

The record must reflect that a criminal defendant pleading guilty understands, and voluntarily waives, his rights against self-incrimination, to trial by jury, and to confront his accusers. *Boykin*, 395 U.S. at 243. If the record reflects that a guilty plea is knowing and voluntary, a prima facie showing has been made. *Mitchell v. Director*, 2015 WL 9898577, at *6 (E.D.Tex., November 6, 2015).

As previously stated, Petitioner argues that his plea was involuntary because

16

he was incompetent to enter a plea because of his mental health and his medication. The conviction of a legally incompetent defendant violates the Due Process Clause of the Fourteenth Amendment. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). The test for competency is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993).Whether a defendant is capable of understanding the proceedings and assisting counsel depends on evidence of a defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

The evidence in the record does not establish that, at the time of his 2010 plea, petitioner did not have sufficient ability to consult with his attorney with a reasonable degree of rational understanding, or that he did not have a factual understanding of the proceedings against him. To the contrary, the record belies any such claim.

The record reflects there was a colloquy between the court and Petitioner at the time he entered his plea. Petitioner answered affirmatively when asked whether he was satisfied with the information, time and advice that he was give by counsel. Petitioner acknowledged that, by pleading guilty, he understood he was foregoing his rights to a jury trial, the right to confront witnesses against him, the right to present

17

witnesses and evidence in his defense, and the right against self-incrimination.

The court also advised Petitioner regarding the crime of Second Degree Murder, to which he was pleading. The court recited the statute as follows: "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole probation or suspension of sentence." Petitioner acknowledged he understood the law and the possible penalty of the crime he was pleading to. Petitioner affirmed he was pleading guilty because he was in fact guilty.

Petitioner indicated that nobody had forced or threatened him to enter his plea. The court then found that Petitioner's plea of guilty was "freely and voluntarily made with the full understanding of [Petitioner's] rights and the nature of the charge", and accepted the plea.

Although the court did not inquire into Petitioner's consumption of medication before the plea, it was able to observe Petitioner's behavior during the plea hearing. The trial court properly relied on its observations in determining that Petitioner was competent to enter his guilty plea. *See Mata v. Johnson*, 210 F.3d 324, 330 (5th Cir.2000) ("The opportunity for face-to-face dialogue between the  court and the petitioner and the ability of the court to personally observe the petitioner is likewise important to the equation."). Petitioner has not offered any evidence to support his

claim that he was incompetent to enter his plea. Despite being offered the opportunity, Petitioner did not ask any questions during the change-of-plea hearing. There is no evidence that Petitioner was acting irrationally or exhibiting any unusual behavior at the hearing. The record does support Petitioner's claim that he was taking medication for psychiatric illness around the time of the change-of-plea hearing, but this fact, standing alone, is not dispositive of Petitioner's contention that he was incompetent to enter a guilty plea.  Even assuming Petitioner was under the influence of medication on April 19, 2010, there is no evidence that such medication affected his rationality or rendered him unable to understand the proceedings or assist counsel.

### 2. Claim Two - Actual Innocence

Petitioner argues that his conviction was "unconstitutional" because he was intoxicated at the time of the offense and therefore could not distinguish between right and wrong. In essence, Petitioner argues he was actually innocent of the crime of second degree murder because he was intoxicated at the time he committed the murder.

To make the requisite showing of  actual innocence, Petitioner is required to produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "must show that it is more likely than not that no reasonable

juror would have convicted [him] in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Moreover, a claim of actual innocence may not be a basis for federal habeas corpus relief absent an independent federal constitutional violation. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Here Petitioner merely contends his conviction was "unconstitutional" and states no "independent constitutional violation occurring in the underlying state criminal proceeding." As provided in the State's response, "voluntary intoxication that results in insanity is not a defense to a crime according to the law of insanity in the State of Louisiana. La. R.S. 14:14." Petitioner has not met either requirement in order to assert an actual innocence claim.[3]

### 3. Claim Three - Ineffective Assistance of Counsel

Petitioner raises the following viable ineffective assistance of counsel arguments in Claim Three: (a) failing to investigate his alcoholism and raise an insanity defense and failing to investigate facts supporting manslaughter (his wife's alleged affair with his boss) and raise a manslaughter defense, and (b) failing to

---

[3] The Court further notes that the evidence in the record does not support Petitioner's claim that his intoxication made him insane. The police reports in the record make no mention of any evidence of intoxication at the time of the crime or when Petitioner turned himself in to the police and was arrested. *R. 32-5, pp. 42–44* . Petitioner's medical records show that when he was evaluated by medical personnel in jail, he repeatedly denied he had a substance abuse problem. *R. 32-8, p. 56*, *Diagnostic Impression*; *R. 32-9, p.3, Psychiatric Assessment*.

inform Petitioner of the option to raise an insanity defense and/or manslaughter defense at trial rather than enter a guilty plea to second degree murder, and (c) failing to ensure that Petitioner was mentally competent.

*Strickland v. Washington*, 466 U.S. 668 (1984) supplies the standard for addressing a claim of ineffective assistance of counsel. *United States v. Smack*, 347 F.3d 533, 537 (3d Cir.2003) (citing *Strickland* at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This standard requires a familiar two-part inquiry. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. The measure for counsel's performance under the first prong of *Strickland* is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." *Id*. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." *Id.* at 687.

To meet the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *U.S. v. Dowling*, 458 Fed.Appx. 396, 398, 2012 WL 117054, at *2 (5th Cir. 2012) (citing *Strickland* at 694). The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Ramirez v. Stephens*, ___ Fed. Appx.___, 2016 WL 454322, at *8 (5th Cir. 2016); *Medellin v. Dretke*, 371 F.3d 270, 277 (5th Cir. 2004).

In considering the allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance.  *See United States v. Cronic*, 466 U.S. 648 (1984). A fair assessment of attorney performance requires that hindsight be eliminated, and that the Court instead reconstruct the counsel's conduct under all of the circumstances of the case. *Strickland*, 466 U.S. at 689.

### a. Insanity and Manslaughter Defenses

Petitioner contends his counsel was ineffective because he failed to investigate and pursue an insanity defense, which Petitioner believes would have exonerated him from criminal liability and failed to investigate facts supporting a manslaughter

defense, which he believes would have resulted in a lesser sentence. Petitioner voluntarily entered a plea of guilty to second degree murder, stating that he was in fact guilty.

Under Louisiana law, a "valid guilty plea operates as a waiver of all non-jurisdictional defects in proceedings that take place prior to the entry of the plea." *State v. Crosby*, 338 So.2d 584 (La.1976); *State v. McKinney*, 406 So.2d 160, 161 (La.1981); *State v. Jenkins*, 419 So.2d 463, 465 (La.1998). This includes pre-plea claims of ineffective assistance of counsel. *Jenkins*, 419 So.2d at 465; *State v. Myles*, 882 So.2d 1254, 1261 (La.App. 3rd Cir.2004) (citing *State v. Holder*, 771 So.2d 780, 781 (La.App. 3rd Cir.2000)); *State v. Mellion*, 439 So.2d 586, 590 (La.App. 1st Cir.1983). The same is true under federal law. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir.1971) (noting that the defense of insanity at the time of the offense is a non-jurisdictional defect). As set forth in the foregoing, Petitioner's guilty plea was knowingly, intelligently and voluntarily entered. Therefore, the entry of Petitioner's plea waived his ineffective assistance of counsel claim.

### b. Failure to Advise of Insanity and Manslaughter Defenses

Petitioner further asserts his counsel was ineffective because he failed to advise Petitioner that he could have been exonerated from criminal liability on grounds of

insanity at trial; and that he could have asserted a manslaughter defense at trial rather than entering a guilty plea to second degree murder.

Petitioner has shown no prejudice from counsel's alleged inaction. More specifically, Petitioner has failed to show that counsel's performance adversely affected the outcome of his plea, or that there is a reasonable probability that, but for counsel's alleged error, he would not have pleaded guilty to  second degree murder and would have insisted on going to trial had counsel advised petitioner of the potential availability of an insanity defense. *Glinsey*, 209 F.3d at 392. As to a manslaughter defense, Petitioner has not alleged that had he gone to trial and asserted a manslaughter defense that he would have been successful and would have received a lighter sentence.

Nor has Petitioner affirmatively alleged that he would not have pleaded guilty and gone to trial had he been informed by counsel of the possibility of an insanity or manslaughter defense. On the record before this Court and under the circumstances of this case,  this Court cannot find that there is a reasonable probability that but for counsel's alleged failure, Petitioner would not have pleaded guilty pursuant to the favorable plea agreement negotiated by counsel, and would have instead insisted on going to trial as charged. Thus, Petitioner has not affirmatively shown prejudice, and has not satisfied his burden under the second prong of Strickland. Petitioner has

therefore not demonstrated that his plea was rendered involuntary as a result of counsel's alleged ineffectiveness. No relief is warranted on this claim.

### c. Mental Competency

Finally, Petitioner contends his counsel was ineffective for failing to ensure that Petitioner was mentally competent.  Once a voluntary, knowing and intelligent guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings preceding the plea are waived, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith*, 711 F.2d at 682; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir.1981).

Therefore, to the extent that Petitioner complains that his trial counsel failed to adequately investigate the facts and circumstances of his mental condition, he can only prevail by showing counsel's deficient representation rendered his plea was involuntary. As discussed above, this he has not done. Therefore, Petitioner's ineffective assistance of counsel claim is equally without merit.

### III. CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.   **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the**

**District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 1st day of June, 2016.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

27